IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | | |
|---|---|---|
| CHRISTOPHER COPE, | ) | Civil No.: 6:13-cv-00599-JE |
| | ) | |
| Plaintiff, | ) | FINDINGS AND |
| | ) | RECOMMENDATION |
| v. | ) | |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

Kathryn Tassinari
Brent Wells
Harder, Wells, Baron & Manning, P.C.
474 Willamette, Suite 200
Eugene, OR 97401

      Attorneys for Plaintiff

S. Amanda Marshall, U.S. Attorney
Adrian L. Brown, Asst. U.S. Attorney
1000 S.W. 3rd Avenue, Suite 600
Portland, OR 97204

Heather Griffith
Special Asst. U.S. Attorney
Office of the General Counsel
Social Security Administration
701 5th Avenue, Suite 2900 M/S 221 A
Seattle, WA 98104-7075

FINDINGS AND RECOMMENDATION – 1

Kathryn Ann Miller
Carol Hoch
Special Asst. U.S. Attorneys
Office of the General Counsel
Social Security Administration
701 5th Avenue, Suite 2900 M/S 901
Seattle, WA 98104-7075

Attorneys for Defendants

JELDERKS, Magistrate Judge:

Plaintiff Christopher Cope brings this action pursuant to 42 U.S.C. § 405(g) seeking judicial review of a final decision of the Commissioner of Social Security (the Commissioner) denying his application for Supplemental Security Income (SSI) under the Social Security Act (the Act). Plaintiff seeks an Order remanding the action to the Social Security Agency (the Agency) for an award of benefits or, in the alternative, for further proceedings.

For the reasons set out below, the Commissioner's decision should be reversed and this action should be remanded for an award of benefits.

## Procedural Background

According to the ALJ and Plaintiff, Plaintiff had a prior period of disability from October 2001 through March 2009. There were periodic cessations of his benefits during this time due to incarcerations and fugitive felon status. His benefits were terminated in April 2009.[1]

Plaintiff filed a new application for SSI on October 14, 2009, alleging that he had been disabled since September 2, 2009. After his claim was denied initially and on reconsideration, Plaintiff filed a written request for an administrative hearing.

On January 17, 2012, a hearing was held before Administrative Law Judge (ALJ) James Yellowtail. Jaye Stutz, a Vocational Expert (VE), testified at the hearing. Plaintiff arrived late to

---

[1] Plaintiff notes that there is no documentation related to Plaintiff's previous period of disability in the record.

FINDINGS AND RECOMMENDATION – 2

the hearing office and security personnel believed that Plaintiff was intoxicated. Forty-five minutes into the hearing, Plaintiff was allowed by security personnel to join the hearing but the ALJ did not take his testimony and Plaintiff's attorney did not object.

The ALJ scheduled Plaintiff for a neuropsychological consultative examination for the day after the hearing. The ALJ declined to schedule a supplemental hearing due to, as the ALJ described, "the claimant's lack of credibility and his apparent refusal to present to medical and legal appointments in a sober fashion." Plaintiff's attorney did not request a supplemental hearing following either Plaintiff's inability to testify at the initial hearing or his receipt of the consultative examination report.

In a decision dated April 5, 2012, ALJ Yellowtail found that Plaintiff was not disabled within the meaning of the Act.

On February 21, 2013, the Appeals Council denied Plaintiff's request for review, rendering the ALJ's decision the final decision of the Commissioner. In the present action, Plaintiff challenges that decision.

## Background

Plaintiff was born on August 1, 1967. He was 42 years old on the date his application was filed and 44 years old at the time of the ALJ's decision. Plaintiff completed the fourth grade and has no past relevant work experience.

## Disability Analysis

The ALJ engages in a five-step sequential inquiry to determine whether a claimant is disabled within the meaning of the Act. 20 C.F.R. §§ 404.1520, 416.920. Below is a summary of the five steps, which also are described in Tackett v. Apfel, 180 F.3d 1094, 1098-99 (9th Cir. 1999).

FINDINGS AND RECOMMENDATION – 3

<u>Step One</u>.  The Commissioner determines whether the claimant is engaged in substantial gainful activity (SGA).  A claimant engaged in such activity is not disabled.  If the claimant is not engaged in substantial gainful activity, the Commissioner proceeds to evaluate the claimant's case under Step Two.  20 C.F.R. § 404.1520(b).

<u>Step Two</u>.  The Commissioner determines whether the claimant has one or more severe impairments.  A claimant who does not have such an impairment is not disabled.  If the claimant has a severe impairment, the Commissioner proceeds to evaluate the claimant's case under Step Three.  20 C.F.R. § 404.1520(c).

<u>Step Three</u>.  Disability cannot be based solely on a severe impairment; therefore, the Commissioner next determines whether the claimant's impairment "meets or equals" one of the presumptively disabling impairments listed in the Social Security Administration (SSA) regulations, 20 C.F.R. Part 404, Subpart P, Appendix 1.  A claimant who has such an impairment is disabled.  If the claimant's impairment does not meet or equal an impairment listed in the regulations, the Commissioner's evaluation of the claimant's case proceeds under Step Four.  20 C.F.R. § 404.1520(d).

<u>Step Four</u>.  The Commissioner determines whether the claimant is able to perform relevant work he or she has done in the past.  A claimant who can perform past relevant work is not disabled.  If the claimant demonstrates he or she cannot do work performed in the past, the Commissioner's evaluation of the claimant's case proceeds under Step Five.  20 C.F.R. § 404.1520(f).

<u>Step Five</u>.  The Commissioner determines whether the claimant is able to do any other work.  A claimant who cannot perform other work is disabled.  If the Commissioner finds that the claimant is able to do other work, the Commissioner must show that a significant number of

jobs exist in the national economy that the claimant can do. The Commissioner may satisfy this burden through the testimony of a vocational expert (VE) or by reference to the Medical-Vocational Guidelines, 20 C.F.R. Part 404, Subpart P, Appendix 2. If the Commissioner demonstrates that a significant number of jobs exist in the national economy that the claimant can do, the claimant is not disabled. If the Commissioner does not meet this burden, the claimant is disabled. 20 C.F.R. § 404.1520(g)(1).

At Steps One through Four, the burden of proof is on the claimant. Tackett, 180 F.3d at 1098. At Step Five, the burden shifts to the Commissioner to show that the claimant can perform jobs that exist in significant numbers in the national economy. Id.

## Medical Record and Testimony

I will address the relevant portions of the medical record and testimony in the discussion of the parties' contentions below.

## ALJ's Decision

At the first step of the disability assessment process, the ALJ found that Plaintiff had not engaged in substantial gainful activity since his application date.

At the second step, he found that Plaintiff had the following "severe" impairments: compression fracture of the thoracic spine status post-intrapedicular screw fixation from T10 to T12, major depressive disorder, post-traumatic stress disorder (PTSD), borderline intellectual functioning and substance abuse disorder.

At the third step, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or equaled a presumptively disabling impairment set out in the listings, 20 C.F.R. Part 404, Subpart P., App. 1.

The ALJ next assessed Plaintiff's residual functional capacity (RFC). He found that Plaintiff retained the capacity to perform light exertional work subject to the following limitations:

> He can perform all postural activities frequently, not constantly, except stooping, which he can perform no more than occasionally. He is able to understand, remember, and carry out simple instructions involving the performance of routine, repetitive tasks that are learnable in 30 days or less. He should have no direct contact with the public and he should be required to engage in little, if any, teamwork.

In determining Plaintiff's RFC, the ALJ found that Plaintiff's statements concerning the intensity, persistence and limiting effects of his alleged symptoms were less than fully credible.

At the fourth step, the ALJ found that Plaintiff had no past relevant work.

Based upon the VE's testimony, at the fifth step of his disability analysis the ALJ found that Plaintiff retained the functional capacity required to perform jobs that existed in significant numbers in the national economy. The ALJ cited basket filler, bench assembler and fastener/sewing machine operator as examples of work Plaintiff could perform. Having concluded that Plaintiff could perform such work, the ALJ found that Plaintiff was not disabled within the meaning of the Act.

## Standard of Review

A claimant is disabled if he or she is unable "to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Claimants bear the initial burden of establishing disability. Roberts v. Shalala, 66 F.3d 179, 182 (9th Cir. 1995), cert. denied, 517 U.S. 1122 (1996). The Commissioner bears the burden of developing the record, DeLorme v. Sullivan, 924 F.2d 841, 849 (9th Cir. 1991), and

bears the burden of establishing that a claimant can perform "other work" at Step Five of the disability analysis process. Tackett, 180 F.3d at 1098.

The district court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g); see also Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995). "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Andrews, 53 F.3d at 1039. The court must weigh all of the evidence, whether it supports or detracts from the Commissioner's decision. Martinez v. Heckler, 807 F.2d 771, 772 (9th Cir. 1986). The Commissioner's decision must be upheld, however, even if "the evidence is susceptible to more than one rational interpretation." Andrews, 53 F.3d at 1039-40.

## Discussion

Plaintiff contends that the ALJ improperly rejected the opinion of examining physician Dr. Stenstrom, failed to adequately support his conclusion that Plaintiff was not wholly credible and failed to meet his burden of proving that Plaintiff retains the ability to perform "other work" in the national economy.

### I. Plaintiff's Credibility

Plaintiff contends that the ALJ failed to give clear and convincing reasons for finding that Plaintiff's allegations were not fully credible.

#### A. Standards for Evaluating Credibility

The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities. Andrews, 53 F.3d at 1039. If a claimant produces medical evidence of an underlying impairment that is reasonably expected to produce some degree of the

symptoms alleged, and there is no affirmative evidence of malingering, an ALJ must provide "clear and convincing reasons" for an adverse credibility determination. Smolen v. Chater, 80 F.3d 1273, 1281 (9th Cir. 1996); Greger v. Barnhart, 464 F.3d 968, 972 (9th Cir. 2006).

In evaluating a claimant's credibility, an ALJ must examine the entire record and consider several factors, including the claimant's daily activities, medications taken and their effectiveness, treatment other than medication, measures other than treatment used to relieve pain or other symptoms, and "any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms." SSR 96-7.  An ALJ may also consider such factors as a claimant's inconsistent statements concerning symptoms and other statements that appear less than candid, unexplained or inadequately explained failure to seek treatment or follow a prescribed course of treatment, medical evidence tending to discount the severity of the claimant's subjective claims, and vague testimony as to the alleged disability and symptoms. Tommasetti v. Astrue, 533 F.3d 1035, 1040 (9th Cir. 2008).

If substantial evidence supports the ALJ's credibility determination, it must be upheld, even if some of the reasons cited by the ALJ are not correct. Carmickle v. Commissioner of Social Security, 533 F.3d 1155, 1162 (9th Cir. 2008).

**B.  Analysis**

Because Plaintiff here produced evidence of impairments that could reasonably be expected to produce some symptoms and there was no affirmative evidence of malingering, the ALJ was required to provide clear and convincing reasons for concluding that Plaintiff's statements regarding his symptoms and limitations were not wholly credible.

In support of his credibility determination, the ALJ asserted that his "primary reason" for discounting Plaintiff's reporting was the "glaring inconsistencies" in the record with respect to

FINDINGS AND RECOMMENDATION – 8

Plaintiff's presentation and reporting to one medical provider versus another. The ALJ noted that Plaintiff demonstrated an ability to sit for an hour or more with minimal pain behavior during psychological testing but was then incapable of sitting for more than a few minutes without position changes during physical examinations. The ALJ also noted that Plaintiff reported to some providers that his chief complaints were physical in nature and asserted to others that his mental health problems were the primary cause of his limitations. The ALJ cited medical records from Plaintiff's emergency room visits that indicate Plaintiff denied any musculoskeletal complaints despite his allegations of back pain to the Agency, and noted inconsistencies in Plaintiff's reporting of PTSD symptoms to different providers. An ALJ may properly rely on claimant's inconsistent statements concerning symptoms and other statements that appear less than candid to discount the severity of the claimant's subjective claims. See Tommasetti, 533 F.3d at 1040. (inconsistent and less than candid statements support adverse credibility finding). The ALJ's observations here provided clear and convincing support for the ALJ's credibility determination. Id.

      The ALJ also asserted that Plaintiff had a history of underreporting his substance abuse history and ongoing activity and presented to medical and legal appointments "in an obviously intoxicated fashion" in "what very well could have been" an attempt to appear more functionally limited than he was. Plaintiff contends that these are not clear and convincing reasons for finding his allegations to be less than wholly credible and the Commissioner does not address this argument in her Response. Although I agree, as Plaintiff argues, that it was "far from clear" that Plaintiff was intoxicated at either the administrative hearing before the ALJ or at his consultative neuropsychological examination on March 10, 2012 with Douglas Smyth, Ph.D., I find that the ALJ could have reasonably concluded, based on his own observations and the report of Dr.

FINDINGS AND RECOMMENDATION – 9

Smyth, that Plaintiff's presentation of his symptoms and limitations was not wholly credible. The ALJ's speculation regarding Plaintiff's *motives* for appearing for appointments in what he described as "an obviously intoxicated fashion" in and of itself is not a clear and convincing reason for discounting Plaintiff's credibility. However, his interpretation of the evidence regarding Plaintiff's state of sobriety and history of underreporting was reasonable and supported by substantial evidence. It, therefore, should not be set aside by this court. See, e.g., Fair v. Bowen, 885 F.2d 587, 604 (9th Cir. 1989) (where evidence subject to multiple interpretations, court does not second guess ALJ's reasonable interpretation).

The ALJ next asserted that Plaintiff received only "minimal treatment" for his alleged impairments, and, specifically that he failed to engage in any significant mental health treatment. The Commissioner correctly notes that an ALJ may properly rely on an "unexplained or inadequately explained failure to seek treatment" to discredit a claimant's subjective symptom testimony. Tommasetti, 533 F.3d at 1039 (quoting Smolen, 80 F.3d at 1284) (internal quotations omitted); Social Security Ruling 96–7p ("[a claimant's] statements may be less credible if the level or frequency of treatment is inconsistent with the level of complaints, or if the medical reports or records show that the [claimant] is not following the treatment as prescribed and there are no good reasons for this failure"). An ALJ may also properly consider a claimant's resistance to treatment or lack of treatment in evaluating credibility. See Molina v. Astrue, 674 F.3d 1104, 1114 (9th Cir. 2012); Burch v. Barnhart, 400 F.3d 676, 681 (9th Cir. 2005) (lack of treatment legitimate consideration in assessing credibility).

The record indicates that although Plaintiff denied he ever had physical therapy for his back impairment, he did claim that he previously had been on medications which had helped. However, there is uncontroverted evidence that Plaintiff has not had disability benefits or

medical insurance since he was released from custody sometime in October 2009, which is his alleged onset date. In August, 2010, Plaintiff reported to the Agency that he was homeless. In addition, Plaintiff argues that the record clearly contains an explanation for Plaintiff's failure to seek consistent mental health treatment. Plaintiff asserts that he had difficulty undergoing psychological evaluations and discussing his childhood experiences. The record reflects that he repeatedly expressed distress and reticence at having to discuss traumatic events during the mental health evaluations he did undergo. During a mental health crisis assessment with Linn County Mental Health Services, he expressed that he did not understand why he had to undergo further mental health evaluations when he had been told at the time he first received Social Security benefits that "he would never have to do this again." The Ninth Circuit has criticized reliance on a lack of treatment to reject mental complaints, opining that it is "a questionable practice to chastise one with a mental impairment for the exercise of poor judgment in seeking rehabilitation." Nguyen v. Chater, 100 F.3d 1462, 1465 (9th Cir. 1996). Furthermore, lack of treatment is justifiable when the record establishes that a claimant cannot afford it. Regennitter v. Commissioner, 166 F.3d 1294, 1296-97 (9th Cir. 1999). Given Plaintiff's financial situation and his mental health severe impairments, the amount of medical treatment he has received since his alleged onset date is not necessarily inconsistent with his complaints and is, therefore, not a sufficient basis for concluding that Plaintiff was not wholly credible.

   The ALJ's assertion that Plaintiff's activities of daily living did not support the degree of limitation he alleged is also not persuasive. The ALJ's only cited example of this was the evidence that Plaintiff was performing "wheelies" on his mountain bike in July 2010. In 2009 and 2010 Plaintiff did report riding his bike for both transportation and leisure purposes and was treated in November 2009 and July 2010 for injuries apparently sustained in connection with

riding his bike. Plaintiff concedes this evidence but correctly points out that July 2010 was the last time Plaintiff reported riding his bike. Almost two years later, in March, 2012, Plaintiff said he was unable to ride his bike due to back pain. The ALJ's citation to an activity that that the record did not reflect Plaintiff performing after July 2010 is not a sufficient reason for discounting Plaintiff's credibility.

In her Response brief, the Commissioner asserts that Plaintiff reported other activities of daily living such as preparing simple meals, attending church, shopping for groceries and attending to personal care and grooming that appeared inconsistent with the alleged severity of his mental symptoms. Even if this court were to impute these arguments to the ALJ, which it cannot do,[2] a claimant need not be "utterly incapacitated" to be eligible for benefits as "the mere fact that a plaintiff has carried on certain daily activities . . . does not in any way detract from [his] credibility as to [his] overall disability." Vertigan v. Halter, 260 F.3d 1044, 1050 (9th Cir. 2001) citing Fair, 885 F.2d at 603.

The ALJ also noted that Plaintiff had not held or attempted to hold a full-time job since adolescence. In her Response, the Commissioner does not rely on the ALJ's analysis of Plaintiff's work history to argue that his evaluation of Plaintiff's credibility was proper. As Plaintiff correctly notes, he was disabled and awarded benefits for the period from October 2001 through March 2009. Plaintiff's work history was not a clear and convincing reason for finding Plaintiff less than wholly credible.

Though he cited a number of inadequate reasons for discounting Plaintiff's credibility, the ALJ cited other clear and convincing reasons for his credibility determination, and his

---

[2] See Bray v. Commissioner, 554 F.3d 1219, 1225 (9th Cir. 2009)("Long-standing principles of administrative law require us to review the ALJ's decision based on the reasoning and factual findings offered by the ALJ—not *post hoc* rationalizations that attempt to intuit what the adjudicator may have been thinking.") (citations omitted).

FINDINGS AND RECOMMENDATION – 12

assessment was supported by substantial evidence. Under these circumstances, his credibility determination should not be set aside. See, e.g., Carmickle, 533 F.3d at 1162 (where supported by substantial evidence, ALJ's credibility determination upheld even if some reasons offered are incorrect).

## II. Dr. Stenstrom's Opinion

As noted above, Plaintiff contends that the ALJ improperly rejected the opinion of examining physician Dr. Davis Stenstrom in favor of the opinion of State Agency reviewing physician, Martin Lahr, M.D., M.P.H. During the administrative hearing, the ALJ and Plaintiff's counsel stipulated that if the ALJ adopted Dr. Stenstrom's assessment in its entirety, he would be required to find Plaintiff disabled. Accordingly, there is no question that, if Dr. Stenstrom's opinions are accepted, a finding of disability is required.

### A. Evaluating Medical Opinion

The opinion of an examining physician is entitled to greater weight than the opinion of a non-examining physician. Pitzer v. Sullivan, 908 F.2d 502, 506 (9th Cir. 1990). An ALJ must provide clear and convincing reasons for rejecting the uncontradicted opinions of an examining physician, id, and must provide specific and legitimate reasons for rejecting opinions of an examining physician that are contradicted by another physician. Andrews, 53 F.3d at 1043. A non-examining physician's opinion "cannot by itself constitute substantial evidence that justifies rejection of the opinion of either an examining physician or a treating physician." Lester v. Chater, 81 F.3d 821, 830–31 (9th Cir. 1995).

### B. Analysis

Dr. David Stenstrom performed a consultative examination of Plaintiff on January 16, 2010 at the request of the State agency. Plaintiff reported back pain resulting from an injury three

years earlier when he fell approximately 35 feet from a ladder. He had undergone surgery and two titanium rods were placed for a fractured spine. He had never had physical therapy for his back injury. Plaintiff reported that he had been on medications previously but had lost both his medical insurance and his disability benefits when he was incarcerated. Plaintiff reported he had been released in October.

Plaintiff told Dr. Stenstrom that his whole back was in pain all the time, every day. Lying down improved the pain but staying in one place too long or moving too quickly made it worse. He wakes up three times a night because of back pain. Plaintiff stated he could stand on his feet for about 30 minutes, can walk approximately one block until his back becomes sore and then has to rest for 15-20 minutes before he can walk again. Plaintiff reported that he could sit for 10-15 minutes but needed to switch positions twice during this time. Plaintiff denied drug and alcohol use.

Dr. Stenstrom noted that Plaintiff had difficulty transferring from a chair to the examination table, had to steady himself with his hands and also brace himself with his hands while sitting. Dr. Stenstrom remarked that Plaintiff looked "quite uncomfortable" sitting but that he was able to walk into the examination room without difficulty.

On the mental status exam, Plaintiff refused to spell the word "world" forward or backward and refused to perform certain mathematical calculations. He was able to learn the words "apple," "table," and "penny" and repeat them but had no recall for this. Plaintiff did not know the current President, did not know how many weeks are in a year and, when asked to identify an island, he responded "Gilligan's Island."

On the physical exam, Dr. Stenstrom noted Plaintiff had a contracture of the right pinky finger. He noted that Plaintiff had a slow gait pace, small step size, and an antalgic gait on the

right with evidence of foot drag on the right.  Plaintiff was using a walking stick that had not been prescribed and that Dr. Stenstrom opined was not medically necessary.  Dr. Stenstrom remarked that Plaintiff was not off-balance and was capable of walking on his tiptoes and heels but refused to "go down on his haunches."

Upon examination, Dr. Stenstrom made the following observations: Plaintiff had zero degrees of back extension and refused flexion.  He had lateral back flexion on both the left and right side of five degrees.  Backward extension of the hips was refused bilaterally.  Hip flexion was limited by pain, as was hip abduction, adduction and knee flexion. Seated straight leg raising was positive at 30 degrees with back pain radiating to the hamstring on the right side and into the groin on the left side.  Supine straight leg raising was limited as Plaintiff could not lay his legs flat.  Plaintiff had decreased ankle jerk on the left side. Dr. Stenstrom noted tenderness to palpation in the mid back at approximately T10 over the spinous process with a loss of lordosis and an extenuated kyphosis of Plaintiff's back.

Dr. Stenstrom diagnosed degenerative disk disease of the thoracolumbar spine with some evidence of possible radiculopathy.  In his functional assessment, Dr. Stenstrom opined that Plaintiff could walk/stand less than two hours, sit less than two hours, could lift/carry 20 pounds occasionally and 10 pounds frequently, was limited to climbing, stooping, crouching and reaching only occasionally and limitations on working at heights.  Dr. Stenstrom remarked that there was some evidence of poor effort with the mental status exam but not with the physical exam, that subjective and objective findings regarding Plaintiff's gross and fine motor skills were consistent, and that his functional limitation conclusions were based on both subjective and objective findings

The ALJ gave "very little weight" to Dr. Stenstrom's opinion as to Plaintiff's RFC because he found that Plaintiff's presentation during that evaluation was "entirely inconsistent with the other objective evidence of record." The ALJ also rejected Dr. Stenstrom's opinion because it was based on subjective findings. The ALJ found, as discussed above, that claimant's reporting lacked credibility and therefore "significant reliance" on that reporting undermined the reliability of Dr. Stenstrom's assessment.

The ALJ instead gave great weight to the opinion of non-examining State agency physician, Dr. Lahr. In a Physical Functional Capacity Assessment report dated February 6, 2010, Dr. Lahr opined that Plaintiff could walk/stand about 6 hours in an 8-hour workday; could lift/carry 20 pounds occasionally and 10 pounds frequently; could climb, balance, kneel, crouch and crawl frequently and stoop occasionally; and had no reaching or environmental limitations. Dr. Lahr concluded that Plaintiff's statements were internally inconsistent and inconsistent with the evidence of record. He gave Dr. Stenstrom's opinion very little weight because he found that an earlier report by examining psychiatrist, Gale Smolen, M.D. indicated that Plaintiff "sat through the interview without any problems and had no difficulty moving upon rising" and reported that he had ridden his bike to the exam and for recreation.

The Commissioner contends that the ALJ properly cited specific and legitimate reasons to reject Dr. Stenstrom's assessment. I disagree. Dr. Stenstrom was the only medical doctor to examine Plaintiff's physical condition and provide a functional assessment. The only other evidence in the medical record that includes any type of physical assessment are cursory reports from emergency room visits for various injuries. Drs. Smolen and Smyth were tasked with evaluating Plaintiff's mental health and the report from mental health worker Neuser also addresses Plaintiff's mental status. Dr. Smolen did note that Plaintiff "sat for about an hour and

FINDINGS AND RECOMMENDATION – 16

didn't get up with any difficulty." However, Plaintiff displayed mild pain behavior during his consultations with both Ms. Neuser and Dr. Smyth. In addition, the circumstances of Plaintiff's examination by Dr. Stenstrom, where he was required to transfer onto an examination table and underwent a comprehensive physical examination, are clearly distinct enough from those of his visits with Drs. Smolen and Smyth to preclude any meaningful comparison. Furthermore, Dr. Lahr's opinion, on its own, does not constitute substantial evidence that justifies the ALJ's rejection of the opinion of an examining physician. See Lester, 81 F.3d at 830–31.

The ALJ also cited Dr. Stenstrom's "significant reliance" on Plaintiff's subjective complaints as a reason to reject his opinion. However, Dr. Stenstrom's report revealed extensive objective findings that supported his conclusions. He noted positive straight leg raise; slow pace with evidence of foot drag; zero degrees of back extension; and hip and knee range of motion limited by pain. Furthermore, Dr. Stenstrom explicitly opined that while Plaintiff displayed some poor effort with the mental status examination there was no evidence of poor effort in connection with the physical exam. Dr. Stenstrom's opinion was not a mere recitation of the Plaintiff's complaints, unsupported by clinical findings. Cf. Fair, 885 F.2d at 605; Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989). His objective findings are consistent with his conclusions regarding Plaintiff's functional limitations. The ALJ erred by rejecting Dr. Stenstrom's opinion.

When an ALJ provides inadequate reasons for rejecting the opinion of a treating or examining physician, that opinion is credited as a matter of law. Lester, 81 F.3d at 834. As noted above, the ALJ stipulated at the administrative hearing that, if credited, Dr. Stenstrom's opinion would compel a finding of disability. Accordingly, the Commissioner's decision should be reversed and this action should be remanded for an award of benefits.

### III. Plaintiff's Ability to Perform "Other Work"

Plaintiff also contends that the Commissioner did not meet her burden of proving that Plaintiff retains the ability to perform "other work" in the national economy. Because I conclude that the ALJ erred in rejecting Dr. Stenstrom's opinion and such a conclusion dictates a recommendation that this action be remanded for an award of benefits, I need not and do not reach this remaining issue.

### Conclusion

For the reasons discussed above, a judgment should be entered reversing the decision of the Commissioner and remanding this action to the Agency for an award of benefits.

### Scheduling Order

This Findings and Recommendation will be referred to a district judge. Objections, if any, are due April 16, 2015. If no objections are filed, then the Findings and Recommendation will go under advisement on that date.

If objections are filed, then a response is due within 14 days after being served with a copy of the objections. When the response is due or filed, whichever date is earlier, the Findings and Recommendation will go under advisement.

DATED this 30th day of March, 2015.

    /s/ John Jelderks
John Jelderks
U.S. Magistrate Judge